23CA1645 Douglas County v Sweet 07-03-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1645 Douglas County District Court No. 20CV30437 Honorable Gary M. Kramer, Judge Board of County Commissioners of the County of Douglas, Colorado, Plaintiff-Appellee, v. Renee Sweet, Defendant-Appellant. ORDERS AFFIRMED Division VI Opinion by JUDGE SCHUTZ Lipinsky and Bernard*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 3, 2024 Jeffrey A. Garcia, County Attorney, Andrew C. Steers, Senior Assistant County Attorney, Castle Rock, Colorado, for Plaintiff-Appellee Renee Sweet, Pro Se *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 Renee Sweet appeals the trial court’s orders related to the enforcement of the injunction entered against her and the associated contempt proceedings. We affirm. I. Background and Procedural History A. 2020 Bench Trial, Contempt Hearing, and Initial Appeal ¶ 2 Sweet owns residential property (the subject property) in unincorporated Douglas County. After receiving complaints about junk and inoperable vehicles on the subject property, the Board of County Commissioners of the County of Douglas (the County) sent zoning compliance officers to inspect. After the inspection, the County notified Sweet that her storage of specified items on the subject property violated several sections of the Douglas County Zoning Resolution (the DCZR). Despite the notice, Sweet continued accumulating prohibited objects on the subject property, placed shipping containers and a greenhouse-type structure within the minimum setbacks, and erected a fence that encroached on the County’s right-of-way. ¶ 3 After Sweet failed to cure the violations of the DCZR, the County filed a six-count complaint against her, in which it requested preliminary and permanent injunctive relief, as well as an 
2 award of civil penalties. In November 2020, the trial court entered a preliminary injunction and set the matter for trial. The County subsequently filed a contempt motion after Sweet refused to comply with the preliminary injunction. ¶ 4 In March 2021, after a one-day bench trial, the court found in the County’s favor, granted the County’s request for a permanent injunction, and awarded civil penalties against Sweet. As relevant here, the injunction (1) barred Sweet from using the subject property as a storage area for junk and ordered her to remove all junk, trash, and rubbish from the subject property; (2) enjoined her from storing inoperable vehicles or unconcealed operable vehicles with expired license plates on, and ordered her to remove such vehicles from the subject property; (3) enjoined her from locating structures within the minimum setbacks of the subject property and ordered her to remove the offending structures; 
3 (4) required her to remove all unpermitted structures from the subject property and not use structures for which no building permits were obtained from the County; and (5) enjoined her from constructing any fence or wall that obstructs the public right-of-way and ordered her to remove all obstructing fencing and walls. ¶ 5 Sweet appealed the trial court’s orders imposing the permanent injunction and the civil penalties. While the appeal was pending, the trial court found Sweet guilty of contempt, sentenced her to thirty days in jail, and imposed daily fines until she complied with the permanent injunction. The court stayed the jail sentence until the appeal concluded. ¶ 6 In July 2022, a division of this court held that Sweet’s claims were without merit and affirmed the trial court’s permanent injunction and award of penalties. See Bd. of Cnty. Comm’rs v. Sweet, (Colo. App. No. 21CA0671, July 28, 2022) (not published pursuant to C.A.R. 35(e)) (Sweet I). The Colorado Supreme Court denied Sweet’s certiorari petition. 
4 B. Post-Appeal History ¶ 7 In March 2023, the mandate issued in Sweet I. After receiving the mandate, the trial court imposed Sweet’s thirty-day jail sentence. The County subsequently filed motions seeking orders to impose per diem penalties and to certify the contempt penalties as a civil judgment. ¶ 8 Sweet served her thirty-day jail sentence in April 2023. In May 2023, she filed a certiorari petition with the United States Supreme Court in Sweet I. But she did not obtain a stay from the trial court or the United States Supreme Court while she pursued that petition. See C.A.R. 8(a)(1)(A) (a party must ordinarily move in the district court to stay a judgment or order from a district court pending appeal). ¶ 9 In August 2023, the trial court set a hearing on the County’s pending motions. Sweet argued at the hearing that the court lacked jurisdiction due to the pendency of her certiorari petition. The court informed her that it retained jurisdiction in the absence of a stay. ¶ 10 Shortly thereafter, Sweet walked out of the hearing. After she left, the trial court heard testimony about the continued DCZR 
5 violations, made detailed findings, and imposed additional daily fines for Sweet’s continued violations of the permanent injunction. The court granted the County’s motions. ¶ 11 Sweet appeals the orders imposing per diem fines and certifying the fines as a civil judgment. She raises a myriad of issues that we address below. II. Jurisdictional Claims ¶ 12 Sweet challenges the trial court’s subject matter jurisdiction in two ways. First, she argues that the court was without jurisdiction because of a temporary COVID-19 order from the Colorado Supreme Court that significantly limited court proceedings during the initial months of the pandemic. Second, she argues the court lost jurisdiction over the case while her petition to the United States Supreme Court was pending. We reject both contentions. ¶ 13 We review de novo whether a court has subject matter jurisdiction. Egelhoff v. Taylor, 2013 COA 137, ¶ 23. In the spring of 2020, during the height of the COVID-19 pandemic, Chief Justice Coats entered an order that temporarily halted jury trials in Colorado. Sweet argues, as a consequence of this order, the trial court lacked jurisdiction to hear the matter when it commenced in 
6 June 2020. Sweet ignores that the order did not stop all proceedings; rather, it only temporarily halted jury trials. Moreover, neither the initial order nor any subsequent Chief Justice order deprived the trial court of subject matter jurisdiction. Those orders simply modified the protocols for certain proceedings. ¶ 14 We also summarily reject Sweet’s contention that the trial court lacked jurisdiction because of the pendency of her certiorari petition to the United States Supreme Court. Neither the filing of an appeal nor a certiorari petition to the Supreme Court automatically stays execution on a judgment. In re Marriage of McCue, 645 P.2d 854, 855 (Colo. App. 1982) (“[A] trial court retains jurisdiction in order to enforce a judgment it has rendered where, as here, the judgment has not been stayed.”). Moreover, the trial court regained full jurisdiction in March 2023, after the mandate issued in Sweet I. Therefore, the trial court had jurisdiction when it issued the orders that Sweet challenges in this appeal. III. Contempt Claims ¶ 15 Sweet raises several claims that the trial court abused its discretion by issuing the contempt orders due to procedural errors 
7 that she contends violated her constitutional rights. We are unpersuaded. A. Standard of Review and Applicable Law 1. Contempt ¶ 16 We review orders imposing contempt sanctions for an abuse of discretion. People v. Aleem, 149 P.3d 765, 774 (Colo. 2007). A trial court abuses such discretion when its ruling is “manifestly arbitrary, unreasonable, or unfair.” People ex rel. State Eng’r v. Sease, 2018 CO 91, ¶ 24. ¶ 17 Trial courts may use their contempt powers to vindicate the dignity and authority of the court and to preserve its viability. Id.; see also C.R.C.P. 107(d)(1) (“The court may impose a fine or imprisonment or both if the court expressly finds that the person’s conduct was offensive to the authority and dignity of the court.”). Under C.R.C.P. 107, there are two types of contempt — direct and indirect — and two types of sanctions, remedial and punitive. In re Parental Responsibilities Concerning A.C.B., 2022 COA 3, ¶ 21. Direct contempt involves conduct that occurs in the judge’s presence. Indirect contempt occurs when a party violates a court order outside the judge’s presence. Id. at ¶ 22. As part of its 
8 inherent authority, the court has the power to enforce obedience to its orders through contempt sanctions. People v. McGlotten, 134 P.3d 487, 489-90 (Colo. App. 2005). 2. Zoning Violations ¶ 18 Section 30-28-124.5, C.R.S. 2023, gives the County broad discretion to address zoning violations: It is unlawful to erect, construct, reconstruct, alter, or use any building, structure, or land in violation of any regulation in, or of any provisions of, any zoning resolution or any amendment thereof, enacted or adopted by the board of county commissioners . . . . [A]ny person, firm, or corporation violating any such regulation . . . may be subject to the imposition . . . of a civil penalty in an amount of not less than five hundred dollars nor more than one thousand dollars. It is within the discretion of the county attorney to determine whether to pursue the civil penalties set forth in this section, the remedies set forth . . . in section 30-28-124, or both . . . . Each day after the issuance of the order of the county court during which such unlawful activity continues shall be deemed a separate violation and shall, . . . be the subject of a continuing penalty in an amount not to exceed one hundred dollars for each such day. Until paid, any civil penalty ordered by the county court and assessed under this subsection (1) shall, as of recording, be a lien against the property on which the violation has been found to exist. In case the assessment is not paid within thirty days, it may be certified by the county 
9 attorney to the county treasurer, who shall collect the assessment, together with a ten percent penalty for the cost of collection, in the same manner as other taxes are collected. The laws of this state for assessment and collection of general taxes, including the laws for the sale and redemption of property for taxes, shall apply to the collection of assessments pursuant to this subsection (1). . . . . . . . In the event any building or structure is erected, constructed, reconstructed, altered, or used or any land is used in violation of any regulation . . . [,] the county attorney of the county in which such building, structure, or land is situated, in addition to other remedies provided by law, may commence a civil action in county court for the county in which such building, structure, or land is situated, seeking the imposition of a civil penalty in accordance with the provisions of this section. § 30-28-124.5(1)-(2)(a) (emphasis added). ¶ 19 This statute authorized the County’s enforcement action and the trial court’s resulting order. See also Pena v. Dist. Ct., 681 P.2d 953, 956 (Colo. 1984) (A trial court has the inherent powers “to perform efficiently its judicial functions, to protect its dignity, independence, and integrity, and to make its lawful actions effective.”). 
10 B. Application ¶ 20 Sweet claims that the trial court exceeded its jurisdiction or abused its discretion by (1) entering the post-appeal orders; (2) issuing an order that lacked objective standards; (3) wrongfully interfering with her ability to file a certiorari petition with the United States Supreme Court by incarcerating her for contempt; and (4) failing to advise her of her right to counsel for the contempt hearing. We reject each of these claims. 1. Post-Appeal Orders ¶ 21 Sweet contends that the trial court lost jurisdiction to issue the post-appeal orders because the court had issued the permanent injunction and contempt order more than two years before. To support this contention, Sweet mistakenly relies on C.R.C.P. 59(j), which requires trial courts to resolve motions for post-trial relief within sixty-three days from the date of filing. Critically, however, the trial court’s subsequent orders did not modify or alter the judgment entered against Sweet; rather, they enforced the existing permanent injunction. For this reason, the court did not act without jurisdiction when it granted the County’s motions (1) for accrued per diem penalties; (2) to certify the contempt penalties as 
11 a civil judgment; and (3) certifying the per diem penalties. Section 30-28-124.5 authorized these remedies. ¶ 22 We also discern no abuse of discretion in the trial court’s contempt findings and subsequent orders. A court has the authority to use its contempt powers to enforce obedience with its orders. McGlotten, 134 P.3d at 489-90. And given the ongoing issues with Sweet’s noncompliance, the court did not abuse its discretion by granting the County’s request for accrued per diem penalties and certifying the contempt and per diem penalties as a civil judgment pursuant to section 30-28-124.5. 2. Lack of Objective Standard ¶ 23 Sweet argues that the trial court abused its discretion by finding her in contempt because the permanent injunction was too vague to be enforceable. More specifically, she argues it provided no objective standard that permitted her to cure the violations. In the absence of an objective standard, she argues that she cannot comply with the permanent injunction and the contempt finding was therefore erroneous. ¶ 24 We decline to address this contention because it is untimely. Sweet should have raised in Sweet I any argument regarding alleged 
12 vagueness in the permanent injunction. At the time of the contempt proceedings, the permanent injunction was a final order, and for the reasons previously stated, the court properly enforced it through its contempt powers. 3. Jail Sentence ¶ 25 Sweet argues that the jail sentence that stemmed from the trial court’s contempt finding violated her constitutional rights by interfering with her ability to submit her certiorari petition to the United States Supreme Court. Not so. Sweet timely filed her certiorari petition. In the absence of any injury, we decline to address this contention further. 4. Right to Counsel ¶ 26 Finally, Sweet asserts the trial court erred by failing to advise her of her right to counsel for the contempt proceedings. However, the record demonstrates that, at a hearing held in March 2021, the court advised her on the motion and provided her with “a court appointed application to be completed and returned to the Court within seven days of the advisement date.” Although Sweet apparently did not complete the application, the court clearly advised her of her right to an attorney. Sweet also contends that 
13 the court did not advise her of her right to call and confront witnesses. But the contempt order reflects that the court advised her on the motion for contempt. IV. Remaining Procedural Claims ¶ 27 Finally, Sweet asserts a hodgepodge of procedural arguments that are largely undeveloped and unpreserved, including that (1) the case against her was erroneously brought in the County’s name, rather than in the name of the People of the State of Colorado; (2) the county attorney misrepresented the evidence during the hearing when he stated that the zoning compliance officer’s testimony was uncontroverted; and (3) the DCZR was not enforceable because it was merely a resolution. ¶ 28 Sweet’s argument that the contempt proceeding should have been brought as a criminal matter in the name of the People rather than as a civil matter is raised for the first time on this appeal. Therefore, we decline to address the argument. See O’Connell v. Biomet, Inc., 250 P.3d 1278, 1282 (Colo. App. 2010) (in civil cases, where an argument “was not presented in the trial court” and is raised as a “new argument for the first time on appeal,” it is 
14 unpreserved and will not be addressed absent extraordinary circumstances not present here). ¶ 29 As pertinent to Sweet’s claims regarding the county attorney’s alleged misrepresentations, Sweet walked out of the courtroom at the commencement of the August 2023 hearing, despite the trial court’s warning that, by doing so, she was waiving her right to participate. Sweet departed before the compliance officer testified concerning the subject property, despite the court’s warning about the consequences of leaving. Furthermore, we agree with the County that the county attorney’s statement that the zoning compliance officer’s testimony was uncontroverted is accurate because Sweet offered no contrary evidence. In any event, Sweet’s claim regarding the zoning compliance officer’s testimony is also unpreserved and we decline to address it. ¶ 30 Finally, Sweet makes a vague argument that the DCZR was unenforceable because it was a mere regulation. But she raised that same argument in Sweet I and the division rejected it. We therefore decline to address the argument further. V. Disposition ¶ 31 The trial court’s orders are affirmed. 
15 JUDGE LIPINSKY and JUDGE BERNARD concur.